# DEPARTMENT OF ENVIRONMENTAL REGULATION v RITTEMAN; DEPARTMENT OF ENVIRONMENTAL REGULATION v BRETT; and DEPARTMENT OF ENVIRONMENTAL REGULATION v WILLIAMS, et al. (Consolidated)

### Case Nos. 88-2560; 88-3532; and 88-3533

State of Florida, Division of Administrative Hearings

January 18, 1989

### APPEARANCES OF COUNSEL

**Richard L. Windsor,** Assistant General Counsel, for petitioner, Department of Environmental Regulation.

**Ralph Ritteman,** pro se.

**John Brett,** pro se.

**Joe Williams,** pro se.

**Richard Szczepanski,** pro se.

### OPINION OF THE COURT

DIANE K. KIESLING, Hearing Officer.

## RECOMMENDED ORDER

Pursuant to notice, a formal hearing was held in these cases on November 21, 1988, in Fort Walton Beach, Florida, before the Division of Administrative Hearings, by its designated Hearing Officer, Diane K. Kiesling.

### ISSUE

1. Whether the Respondents have polluted by dredging and filling within the landward extent of waters of the state, to wit: Choctawhatchee Bay, without a permit for said dredging and filling.

2. Whether the Orders for Corrective Action requiring removal of the fill material and restoration of the disturbed wetlands are reasonable and appropriate.

### BACKGROUND AND PROCEDURAL MATTERS

The Department of Environmental Regulation (DER) presented the testimony of Clifford S. Rohlke, John A. Poppell, Ralph A. Ritteman, John J. Brett, and George T. Baragona. DER's Exhibits 1-17 were admitted in evidence.

Ritteman presented his own testimony and that of Basil J. Boles. Ritteman's Exhibits 1-3 were admitted in evidence.

John Brett, Joe Williams and Richard Szczepanski each testified on his own behalf.

DER, Ritteman, and Williams and Szczepanski (jointly) filed proposed findings of fact and conclusions of law which have been considered. To the extent possible, a specific ruling on each proposed finding of fact has been made in the Appendix attached hereto and made a part of this Recommended Order.

### FINDINGS OF FACT

1. Ralph Ritteman has owned some interest in property which has been developed as a subdivision known as Sunset Point, including Sunset Point Addition, since approximately 1970. This property adjoins Choctawhatchee Bay and the Intercoastal Waterway in Walton County, Florida.

2. In early 1984, a subdivision plat was recorded for lots 1-13. That plat showed two areas specifically not to be a part of it.

3. Those two areas were the site of dredging and filling activities by Ralph Ritteman, where he had eleven pounds excavated and the spoil placed on the property.

222

4. The Department of Environmental Regulation asserts that te excavation of the ponds and the placement of the spoil occurred in jurisdictional wetlands of the state. Ritteman asserts that the property is not jurisdictional and that no permit was needed.

5. The primary dredge and fill activities occurred between June and October, 1984. Ritteman represented that these were the dates of the activity in an after-the-fact permit application which he filed with DER but later withdrew. In the course of his testimony in this proceeding, Ritteman took the position that he did the dredging and filling after a November 14, 1985, seminar presented by DER regarding wetland regulations wherein he was misled by a document distributed by DER entitled "State of Florida Joint Application for Permit," which covered dredge and fill guidelines. Specifically Ritteman testified that he did the dredging and filling *after* that seminar. It can only be concluded that Ritteman's testimony in that regard is false and that Ritteman did the unpermitted dredging and filling in 1984 and knew at the time that his activities were at the very least questionable. Specifically, (1) the 1983 plat shows these exact wetlands as excluded; (2) A February 14, 1985, buy back agreement between Ritteman and Jerry Johnson, a purchaser of a lot on which the dredging and filling activity had occurred, showed that there was an existing concern about future action by a public agency to require restoration of the property to its prior condition; (3) John Brett, a Respondent herein because he purchased a lot from Ritteman in the affected area, bought the lot in 1985 with the existing ponds in place except for a land bridge which Ritteman had excavated (in 1985) and the fill placed for Brett to use as a homesite; and (4) Richard Sczcepanski, a Respondent herein, bought his lot in February, 1985, and the ponds and spoil were already in existence. Further, observation of Ritteman during his testimony and appearance at this proceedings leads this fact finder to the conclusion that Ritteman was less than candid in all of his testimony and dealings.

6. After engaging in this unpermitted dredging and filling activity, Ritteman divided the affected area into lots and sold these lots to John and Dorothy Brett, Richard Szczepanski, Joe Williams, Jerry Johnson, Mohamed Yazdi, and Reza Toossi. A plat of the newly created lots was recorded as the Sunset Point Addition. All of these purchasers were named by DER in its Notice of Violation. Only the Respondents herein requested a hearing.

7. The lots were sold by Ralph Ritteman and the Florida-Minnesota Land Company. However, that corporation's authority to do business in Florida was revoked on November 10, 1983, by the Secretary of State's Office.

8. The DER discovered the unpermitted activity in 1986 and conducted an investigation to determine if the property impacted by the dredging and filling had been jurisdictional wetlands.

9. The sites described in the Notice of Violation are vegetated with plant species consisting of black needlerush *(Juncus roemerianus),* sawgrass *(Cladium jamaicense),* salt meadow cordgrass *(Spartina patens),* salt grass *(Disticalus spicata),* and giant reed *(Phragmites australis).* The Department's investigation, using core samples, located the former surface of the undisturbed wetland beneath approximately 1 ½ feet of dredged spoil material; the plant species *Juncus roemerianus* was also identifiable beneath the layer of spoil material placed on top of it by Ralph Ritteman.

10. A beach berm is present at the shoreline interface of the marsh areas with Choctawhatchee Bay. Beach berms such as this one are typically built up in most marshes by the wave action.

11. On the site are piles of unconsolidated fill material that was excavated from the pond areas. Included in this excavated material is muck and black silt-type material associated with salt marsh and gray clay material which was the underpan or confining layer.

12. The Soil Survey Report of 1985 for Walton County shows that on the south site of the dredging activities, the soil type (prior to the excavation and filling) was Duckston muck, which is found in frequently flooded areas in very poorly drained sandy soils in marshes bordering salt water bays. Duckston muck consists of a 4-inch surface layer of black muck over loamy sand. The norther site soil type is Dirego muck, also found in frequently flooded areas with very poorly drained organic soils that occur in tidal marshes. Dirego muck consists of about 28 inches of muck overlying fine sand and loam fine sand.

13. A 1982 aerial photo clearly shows the delineation between the marshgrass area and the uplands. The current conditions at the site are entirely consistent with the delineation shown in this photo.

14. There are remaining wetlands at the site in an area denoted as the homeowners' park on the plat map of the Sunset Point Addition. There is an interchange of water between the remaining wetlands and the bay.

15. Based on all the data, including, but not limited to, aerial photographs, remnant and existing vegetation, site observations, topography, hydrological data and soil types, it is clearly established that, prior to this unpermitted activity, there was a regular, periodic interchange and exchange of water between these wetlands and waters of

the state. The two areas of unpermitted activity clearly fall within the jurisdictional wetlands of the state.

16. Choctawhatchee Bay is brackish water and is tidally influenced. In a misapplication of the statute and rule, Ritteman offered into evidence a survey which purported to show the 1 in 10 year flood event elevation. This elevation line was set by surveyor Basil Boles' memory of rainfall and his observation of the rack-line or detritus on the beach as it existed in October, 1988. This elevation was not developed by the appropriate engineering techniques required by Section 403.8171, *Florida Statutes,* and is therefore given no weight.

17. The unpermitted dredging and filling has resulted in pollution as defined by statutes and it eliminated and destroyed plant life in jurisdictional wetlands. It also eliminated the interchange of waters and the contribution of that interchange to the ecology and viability of the marsh system in the area.

18. The Department expended in excess of $494.23 in investigating this violation, but it sought only $494.23 in the Notice of Violation.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction of the parties to and subject matter of these proceedings. Section 120.57(1), *Florida Statutes.*

The Department of Environmental Regulation has been granted broad powers to order the prevention, abatement or control of conditions creating a violating of Section 403.913 et seq., *Florida Statutes,* the Warren S. Henderson Wetlands Protection Act of 1984. Section 403.121(2)(b), *Florida Statutes,* authorizes DER to order other appropriate corrective action.

The dredging and filling described in the Notice of Violation took place within the landward extent of waters of the State as defined in Rule 17-3.022 (formerly 17-4.022), *Florida Administrative Code,* and Sections 403.817 and 403.8171, *Florida Statutes.*

The marsh areas in which the dredging and filling occurred were populated by plant species *Juncus roemerianus, Cladium jamaicense, Spartina patens, Disticulus spicata* and *Phragmites australis,* and are consequently within DER's permitting jurisdiction.

There is a regular and periodic exchange of waters between the marsh and Choctawhatchee Bay, occurring during high tides and during or after storm or heavy rainfall events.

The exhibits purporting to be a survey setting out the location of the

225

1 in 10 year flood event elevation was not developed by the "appropriate engineering techniques" required by Section 403.8171, *Florida Statutes.* Further, the statute is clear that for waters which are saline or brackish, the method of demarcation of the landward extent of waters of the state set out in Rule 17-3.022 (formerly 17-4.022) shall be the sole method used.

The unpermitted dredging and filling activities described in the Notice of Violation are part of a proposed residential development project which is intended to be of a permanent nature. It will have an incremental negative effect on water quality. Respondent Ritteman's dredging and filling has resulted in destruction of several acres of wetlands and salt marsh, with an adverse affect on filtration and uptake of nutrients from upland runoff and a predictable loss of wildlife habitat.

Ritteman argues that DER failed to follow its own guidelines as set forth in the pamphlet entitled "State of Florida Joint Application for Permit." This argument is rejected both because it is incorrect and because the unpermitted activity occurred prior to Ritteman's exposure to the pamphlet.

It is concluded that Ritteman engaged in these unpermitted dredge and fill activities within jurisdictional wetlands and that in doing so, he has violated the law and caused pollution. The appropriate corrective action is to restore the affected area to the condition it was in prior to the unpermitted activity. While Ritteman is the person to be held primarily responsible for the restoration, the property owners who purchased those lots after Ritteman's unpermitted activities are responsible, at the very least, for cooperation and site access during the restoration activities, and at the most, for liens which may be imposed if Ritteman fails to accept the financial responsibility for the restoration. Ritteman is solely responsible for the costs incurred by DER in investigating this unpermitted activity.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED that the Department of Environmental Regulation enter a Final Order and therein:

1. Find Ralph Ritteman guilty of the violations charged for the unpermitted dredge and fill activity within the landward extent of waters of the state.

2. Order Ritteman to bear the cost of and to perform restoration as specified in the Orders for Corrective Action.

3. Order Ritteman to pay $494.23 to the Department of Environmental Regulation for the investigation of this violation.

4. Order John and Dorothy Brett, Joe Williams and Richard Szczepanski to provide cooperation and site access during the restoration activities.

DONE and ENTERED this 18th day of January, 1989, in Tallahassee, Florida.